## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br>U.S. Department of Justice<br>Antitrust Division<br>450 Fifth Street, NW<br>Suite 4100<br>Washington, D.C. 20530,<br>*Plaintiff,*<br><br>v.<br><br>**SIGNATURE FLIGHT SUPPORT CORPORATION**<br>Signature Plaza<br>201 South Orange Avenue<br>Suite 1100<br>Orlando, Florida 32801<br><br>and<br><br>**HAWKER BEECHCRAFT SERVICES, INC.**<br>10511 East Central<br>Wichita, Kansas 67206,<br><br>*Defendants.* | Civil Action No.:<br><br>Filed:<br><br>Judge:<br><br>Date Stamp: |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the

United States, brings this civil antitrust action to enjoin the proposed acquisition by Signature

Flight Support Corporation ("Signature") of fixed base operations of Hawker Beechcraft

Services, Inc. ("Hawker Beechcraft") and to obtain equitable and other relief. The United States

alleges as follows:

**I.**

## NATURE OF THE ACTION

1.      On February 21, 2008, Signature and Hawker Beechcraft signed a definitive

agreement for Signature to acquire Hawker Beechcraft's United States' fixed base operations

("FBO") for $128.5 million.  FBOs provide flight support services—including fueling, ramp and

hangar rentals, office space rentals, and other services—to general aviation customers.  Signature

is the largest fixed base operator in the world and operates FBOs at more than forty-five airports

around the country.  Hawker Beechcraft operates FBOs at seven airports in the United States.

Both Signature and Hawker Beechcraft operate FBOs at the Indianapolis International Airport

("IND").

2.      Signature and Hawker Beechcraft are the only two FBOs operating at IND

Airport.  They compete directly on price and quality of FBO services to general aviation

customers.  The acquisition would eliminate this competition, creating an FBO monopoly at

IND.  The acquisition would give Signature the ability to raise prices and lower the quality of

services at IND for general aviation customers.  Unless the transaction is enjoined, the proposed

acquisition is likely to lessen competition substantially in the market for FBO services at IND in

violation of Section 7 of the Clayton Act,  15 U.S.C. § 18.

2

## II.

### JURISDICTION AND VENUE

3.      The United States brings this action under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

4.      The defendants are engaged in interstate commerce and in activities substantially affecting interstate commerce.  Signature and Hawker Beechcraft provide FBO services to aircraft landing throughout the United States.  This Court has subject matter jurisdiction over this action and jurisdiction over the parties pursuant to 15 U.S.C. §§ 22 and 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

5.      Venue is proper in this district as Signature and Hawker Beechcraft have consented to venue and personal jurisdiction in this judicial district.

### III.

### DEFENDANTS AND THE PROPOSED TRANSACTION

6.      Signature is a wholly-owned subsidiary of BBA Aviation PLC, a supplier of aviation machinery, support, and repair.  Signature is a Delaware corporation with its principal place of business in Orlando, Florida.  Signature owns and operates more than sixty FBO facilities in the United States, including its FBO operation at IND.

7.      Hawker Beechcraft is a Kansas corporation with its principal place of business in Wichita, Kansas.  Hawker Beechcraft owns and operates seven FBO facilities in the United States, including its FBO operation at the IND Airport.

8.      On February 21, 2008, Signature and Hawker Beechcraft executed a Sale of Line

Service Business Asset Purchase Agreement under which Signature will acquire all of Hawker Beechcraft's FBO assets for approximately $128.5 million.

IV.

**TRADE AND COMMERCE**

**The Relevant Market**

9.    FBO services include the sale of jet aviation fuel ("Jet A fuel") and aviation gasoline ("avgas"), as well as related support services, to general aviation customers. FBOs usually do not charge separately for services such as conference rooms, pilot lounges, flight planning, and transportation. Instead, they recover the cost of these ancillary services in the price that they charge for fuel. FBOs charge separately for hangar and office rentals, aircraft storage, tie-down and ground services, deicing, and catering.

10.    The largest source of revenue for an FBO is fuel sales. FBOs sell Jet A fuel for jet aircraft, turboprops and helicopters, and avgas for smaller, piston-operated planes. At IND, Signature and Hawker Beechcraft sold approximately $17 million of fuel in 2007, and obtained additional revenues of approximately $3 million for other FBO-related services.

11.    General aviation customers cannot obtain fuel, hangar, ramp and related services at IND except through the FBOs authorized to sell such products and services by the local airport authority, leaving general aviation customers landing at IND no alternatives to the Signature and Hawker Beechcraft FBOs for these services. Obtaining FBO services at another airport would not provide an economically practical alternative for general aviation customers who currently use IND. A small but significant post-acquisition increase in the prices for fuel, hangar space, and other FBO services would not cause general aviation customers to switch to other airports in

4

sufficient quantities to make such a price increase unprofitable.

12.    Thus, the provision of FBO services to general aviation customers is a relevant product market and IND is a relevant geographic market (i.e., a line of commerce and a section of the country) under Section 7 of the Clayton Act, 15 U.S.C. § 18.

## Anticompetitive Effects

13.    The market for FBO services at IND is highly concentrated, with only two providers—Signature and Hawker Beechcraft. If Signature acquires the Hawker Beechcraft FBO facility, it will have a monopoly in the market for FBO services at IND. Currently, based on fuel sales, Signature has 46 percent of the IND FBO market, and Hawker Beechcraft has 54 percent.

14.    Competition between Signature's and Hawker Beechcraft's FBO facilities currently limits the ability of each to raise prices for FBO services. The proposed acquisition would eliminate the competitive constraint each imposes upon the other. This would to lead to a monopoly, resulting in higher prices for FBO services, as well as lower quality of service, at IND in violation of Section 7 of the Clayton Act.

15.    Successful entry into the provision of FBO services at IND would not be timely, likely, or sufficient to deter the anticompetitive effects resulting from this transaction. Timely entry sufficient to replace the market impact of Hawker Beechcraft would be difficult for several reasons. The entrant would need to get the approval of the airport authority, obtain permits, and construct facilities, all of which require extensive lead time to complete. Successful entry would be unlikely to occur in response to a small but significant and non-transitory post-merger price increase.

## V.

## <u>VIOLATION ALLEGED</u>

16.     The United States hereby incorporates paragraphs 1 through 15.

17.     Unless restrained, Signature's proposed acquisition of Hawker

Beechcraft's FBO facility at IND is likely to tend to create a monopoly in the market for FBO

services at IND in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, in the

following ways:

 a.     Actual and potential competition between Signature and Hawker Beechcraft in the

  market for FBO services at IND will be eliminated;

 b.     Competition in the provision of FBO services at IND will be eliminated; and

 c.     Prices for FBO services to general aviation customers at IND will likely increase

  and quality of service will likely decrease.

## VI.

## <u>REQUEST FOR RELIEF</u>

18.     The United States requests that:

 a.     Signature's proposed acquisition of Hawker Beechcraft's FBO facility at IND be

  adjudged and decreed to be unlawful and in violation of Section 7 of the Clayton

  Act, 15 U.S.C. § 18;

 b.     defendants and all persons acting on their behalf be preliminarily and permanently

  enjoined and restrained from consummating the proposed transaction or from

  entering into or carrying out any contract, agreement, plan, or understanding, the

6

effect of which would be to combine Signature's and Hawker Beechcraft's FBO operations at IND;

c.      the United States be awarded its costs for this action; and

d.      the United States receive such other and further relief as the Court deems just and proper.

Respectfully submitted,

James J. O'Connell, Jr.
Acting Assistant Attorney General
DC Bar #464109


Patricia A. Brink
Deputy Director, Office of Operations


Donna N. Kooperstein
Chief
Transportation, Energy &
    Agriculture Section


William H. Stallings
Assistant Chief
Transportation, Energy &
    Agriculture Section

Angela L. Hughes
DC Bar #303420
Michelle Livingston
DC Bar #461268

Trial Attorneys
U.S. Department of Justice
Antitrust Division
Transportation, Energy &
    Agriculture Section
450 Fifth Street, NW
Room 4100
Washington, DC 20530
Telephone: (202) 307-6410
Facsimile: (202) 307-2784

Dated: July 3, 2008.

7

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> **SIGNATURE FLIGHT SUPPORT** ) <br> **CORPORATION** *and* ) <br> ) <br> **HAWKER BEECHCRAFT SERVICES,** ) <br> **INC.,** ) <br> *Defendants.* ) | **Civil Action No.:** <br><br> **Filed:** <br><br> **Judge:** <br><br> **Date Stamped:** |

### PLAINTIFF UNITED STATES'
### EXPLANATION OF CONSENT DECREE PROCEDURES

Plaintiff United States of America submits this memorandum summarizing the procedures for entry of the proposed Final Judgment as set forth by the Antitrust Procedures and Penalties Act, 15 U.S.C. §§ 16(b)-(h) (the "APPA"), which applies in civil antitrust cases brought and settled by the United States. As described below, the APPA provides that certain events must occur prior to the Court signing and entering the proposed Final Judgment to resolve this case.

1.  Today, Plaintiff has filed a Complaint, proposed Final Judgment, Competitive Impact Statement, and Hold Separate and Preservation of Assets Stipulation and Order between the parties ("Stipulation and Order").

2.      Defendants have agreed in the Stipulation and Order that they will abide by the terms of the proposed Final Judgment in the interim and also follow certain procedures described in the Stipulation and Order between consummation of their merger and the divestitures required by the proposed Final Judgment.  At this time, we ask that the Court only sign the Stipulation and Order.

3.      The Stipulation and Order also contains the parties' agreement that, after compliance with the APPA, the Court may enter the proposed Final Judgment.  The APPA requires that Plaintiff publish the proposed Final Judgment and the Competitive Impact Statement in the *Federal Register* and in certain newspapers at least sixty (60) days prior to entry of the proposed Final Judgment. The notice will inform members of the public that they may submit comments about the proposed Final Judgment to the United States Department of Justice, Antitrust Division (*see* 15 U.S.C. §§ 16(b)-(c)).

4.      During the sixty-day period, Plaintiff will consider, and at the close of that period respond to, any comments that it has received, and it will publish the comments and Plaintiff's responses in the *Federal Register*.

5.      After the expiration of the sixty-day period, Plaintiff will file with the Court the comments and Plaintiff's responses, and Plaintiff either will ask the Court to enter the Final Judgment (subject to any proposed revisions) or will withdraw its consent to entry of the Final Judgment, as provided in Section IV(A) of the Stipulation and Order (*see* 15 U.S.C. § 16(d)).

6.      If Plaintiff requests that the Court enter the proposed Final Judgment after compliance with the APPA, 15 U.S.C. §§ 16(e)-(f), then the Court may enter the Final Judgment

2

without a hearing, provided that the Court concludes that the Final Judgment is in the public

interest.

Dated: July 3, 2008

Respectfully submitted,

FOR PLAINTIFF:

Angela L. Hughes (DC Bar #303420)
Trial Attorney
United States Department of Justice
Antitrust Division
450 5th St. NW, Suite 4100
Washington, D.C. 20530
Telephone No.: 202-307-6410
Facsimile No.:  202-307-2784

3

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

United States of America

**DEFENDANTS**

Signature Flight Support Corporation; Hawker Beechcraft Services, Inc.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Orange Cty. FL.
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Angela L. Hughes; U.S. Dep't. of Justice; Antitrust Div.; 450 5th St., NW; Suite 4100; Washington, DC 20530; 202/307-6410

**ATTORNEYS (IF KNOWN)**

Signature - Gordon L. Lang; Nixon Peabody; 401 9th St., NW; Wash, DC 20004; 202-585-8319
Hawker Beechcraft - Richard Park; Fried Frank; 1001 Pa. Ave., NW; Wash., DC 20004 202-639-7064

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 2 U.S. Government Defendant
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ( ) 1 | ( ) 1 | Incorporated or Principal Place of Business in This State | ( ) 4 | ( ) 4 |
| Citizen of Another State | ( ) 2 | ( ) 2 | Incorporated and Principal Place of Business in Another State | ( ) 5 | ( ) 5 |
| Citizen or Subject of a Foreign Country | ( ) 3 | ( ) 3 | Foreign Nation | ( ) 6 | ( ) 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**( ) A. Antitrust**

- [X] 410 Antitrust

**( ) B. Personal Injury/ Malpractice**

- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

**( ) C. Administrative Agency Review**

- [ ] 151 Medicare Act

Social Security:
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

**( ) D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ( ) E. General Civil (Other)    OR    ( ) F. Pro Se General Civil

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food &Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O **G.** *Habeas Corpus/ 2255* | O **H.** *Employment Discrimination* | O **I.** *FOIA/PRIVACY ACT* | O **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K.** *Labor/ERISA (non-employment)* | O **L.** *Other Civil Rights (non-employment)* | O **M.** *Contract* | O **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
15 U.S.C. Section 18 -- Suit seeking injunction against proposed acquisition as violative of Section 7 of the Clayton Act.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  **DEMAND $** _____  Check YES only if demanded in complaint  **JURY DEMAND:**  YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☐  If yes, please complete related case form.

DATE  7/3/0P  **SIGNATURE OF ATTORNEY OF RECORD**

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* | ) ) ) ) | **Civil Action No.:** **Filed:** |
| v. | ) ) | |
| SIGNATURE FLIGHT SUPPORT CORPORATION *and* | ) ) ) | **Judge:** |
| HAWKER BEECHCRAFT SERVICES, INC., *Defendants.* | ) ) ) ) | **Date Stamp:** |

## PROPOSED FINAL JUDGMENT

WHEREAS, plaintiff, the United States of America ("United States"), filed its complaint on July ___, 2008, the United States and defendants, Signature Flight Support Corporation ("Signature") and Hawker Beechcraft Services, Inc. ("Hawker Beechcraft"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of law or fact;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is prompt and certain divestiture of certain assets by the defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made, and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW, THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is hereby ORDERED, ADJUDGED, AND DECREED:

## I. <u>Jurisdiction</u>

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against the defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. <u>Definitions</u>

As used in this Final Judgment:

A.    "Acquirer" means the entity to whom defendants divest the Divestiture Assets.

2

B.     "Signature" means defendant Signature Flight Support Corporation, a Delaware corporation with its headquarters in Orlando, Florida, its successors and assigns, and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.     "Hawker Beechcraft" means defendant Hawker Beechcraft Services, Inc., a Kansas corporation headquartered in Wichita, Kansas, its successors and assigns, and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.     "IND" means Indianapolis International Airport, located in the Indianapolis, Indiana metropolitan area.

E.     "IND FBO Services" means any or all services related to providing fixed base operator services to general aviation customers at IND, including, but not limited to, selling fuel, leasing hangar, ramp, and office space, providing flight support services, providing access to terminal facilities, or arranging for ancillary services such as rental cars or hotels.

F.     "FBO Facility" means any and all tangible and intangible assets that comprise the business of providing IND FBO Services, including, but not limited to, all personal property, inventory, office furniture, materials, supplies, terminal space, hangars, ramps, general aviation fuel tank farms for jet aviation fuel and aviation gas, and related fueling equipment, and other tangible property and all assets used in connection with the business of providing IND FBO Services; all licenses, permits, registrations, and authorizations issued by any governmental

3

organization relating to the business of providing IND FBO Services subject to licensor's

approval or consent; all contracts, teaming arrangements, agreements, leases, commitments,

certifications, and understandings relating to the business of providing IND FBO Services,

including supply agreements; all customer lists, contracts, accounts, and credit records; all other

records relating to the business of providing IND FBO Services; all intangible assets used in the

development, production, servicing, and sale of IND FBO Services, including, but not limited to,

all licenses and sublicenses, technical information, computer software and related

documentation, know-how, drawings, blueprints, designs, design protocols, specifications for

materials, specifications for parts and devices, and safety procedures for the handling of materials

and substances.

      G.    "Divestiture Assets" means either of the following:

          1.    all rights, titles and interests, including all fee, leasehold and real property

rights, in Hawker Beechcraft's existing and future FBO Facilities at IND

that Signature acquires in the Proposed Transaction; or

          2.    all rights, titles and interests, including all fee, leasehold and real property

rights, that Signature possesses in its FBO Facility at IND.

      H.    "Proposed Transaction" means Signature's proposed acquisition of certain assets

from Hawker Beechcraft pursuant to the Sale of Line Service Business By Hawker Beechcraft

Services, Inc. to Signature Flight Support Corporation Asset Purchase Agreement Dated

February 21, 2008 that is the subject of the Hart-Scott-Rodino Premerger Notification Filing 2008-0879.

### III. Applicability

A.    This Final Judgment applies to Signature and Hawker Beechcraft, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.    If, prior to complying with Section IV or V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the acquirer of the assets divested pursuant to this Final Judgment.

### IV. Divestitures

A.    Defendants are ordered and directed, within ninety (90) calendar days after the filing of the Complaint in this matter or after five (5) calendar days after notice of entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period, not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances. If pending state or local regulatory approval is the only remaining matter

5

precluding a divestiture after the 90-day period, the United States will not withhold its agreement to an extension of the period. Defendants agree to use their best efforts to complete the required divestiture as expeditiously as possible.

B.    In accomplishing the divestiture ordered by this Final Judgment, defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making inquiry regarding a possible purchase of Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents regarding the Divestiture Assets customarily provided in a due diligence process, except such information or documents subject to the attorney-client privilege or work-product doctrine. The documents provided to prospective Acquirers shall include (1) the Land and Special Facilities Lease Agreement By and Between Hawker Beechcraft Services, Inc. and The Indianapolis Airport Authority dated February 2008; (2) the Sublease between Hawker Beechcraft Services, Inc. and Signature Flight Support Corporation and the Addendum thereto; and (3) the agreement entitled Sale of Line Service Business By Hawker Beechcraft Services, Inc. to Signature Flight Support Corporation Asset Purchase Agreement Dated February 21, 2008 and all attachments and exhibits relating to IND. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

6

C.    Defendants shall provide the Acquirer and the United States information relating to the personnel involved in the operation, management, and sale of the Divestiture Assets to enable the Acquirer to make offers of employment.  Defendants will not interfere with any negotiations by the Acquirer to employ any defendant employee whose primary responsibility is the operation, management, and sale of the Divestiture Assets.

D.    Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make such inspection of the physical facilities of the Divestiture Assets and to examine the blueprints and other plans relating to any physical facilities of the Divestiture Assets under construction or proposed for construction; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.    Defendants shall warrant to the Acquirer of the Divestiture Assets that each asset will be operational on the date of sale.

F.    Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.    Defendants shall warrant to the Acquirer of the Divestiture Assets that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendants will not undertake,

7

directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

H.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by a trustee appointed pursuant to Section V, of this Final Judgment, shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business engaged in providing IND FBO Services. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment: (1) shall be made to an Acquirer that in the United States's sole judgment has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the provision of IND FBO Services; and (2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and defendants gives defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. **Appointment of Trustee**

A.      If defendants have not divested the Divestiture Assets within the time period specified in Section IV(A) of this Final Judgment, defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a trustee becomes effective, only that trustee shall have the right to sell the Divestiture Assets. The  trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the judgment of the trustee to assist in the divestiture.

C.      Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.      The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the plaintiff approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee

9

arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.    Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the Divestiture Assets, including the blueprints and other plans relating to any physical facilities of the Divestiture Assets under construction or proposed for construction, and defendants shall develop financial or other information relevant to the Divestiture Assets as the trustee may reasonably request, subject to reasonable protection for trade secrets or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.    After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth that trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

10

G.     If the trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the trustee shall file promptly with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The trustee shall at the same time furnish such report to the United States, who shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court shall thereafter enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment for a period requested by the United States.

## VI. Notice of Proposed Divestiture

A.     Within two (2) business days following execution of a definitive divestiture agreement, defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment.  If a trustee is responsible, the trustee shall similarly notify defendants.  The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered, or expressed an interest in or a desire to acquire any ownership interest in the Divestiture Assets together with full details of same.

11

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendant's limited right to object to the sales under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, the divestiture proposed under Section IV or V shall not be consummated. Upon objection by defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. **Financing**

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. **Hold Separate**

Until the divestiture required by this Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. **Affidavits**

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, defendants shall deliver to the United States an affidavit as to the fact and manner of compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets and to provide required information to prospective purchasers, including the

13

limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by the defendants, including limitation on information, shall be made within fourteen (14) days of receipt of such affidavit.

B.    Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an on going basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.    Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after the divestiture has been completed.

## X. Compliance Inspection

A.    For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice Antitrust Division ("DOJ"), including consultants and other persons retained by the United States, shall upon written request of an authorized representative of the

14

Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants be permitted:

    1.    access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants relating to any matters contained in this Final Judgment; and

    2.    to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the

United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. No Reacquisition

Defendant Signature may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIII.  **Expiration of Final Judgment**

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

### XIV.  **Public Interest Determination**

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.


Dated: _____


                                            Court approval subject to procedures of Antitrust
                                            Procedures and Penalties Act, 15 U.S.C. § 16



                                            _____
                                            United States District Judge


17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>*Plaintiff,* )<br> )<br>v. )<br> )<br>**SIGNATURE FLIGHT SUPPORT** )<br>**CORPORATION**   *and* )<br> )<br>**HAWKER BEECHCRAFT SERVICES,** )<br>**INC.,** )<br>*Defendants.* )<br> ) | **Civil Action No.:**<br><br>**Filed:**<br><br>**Judge:**<br><br>**Date Stamped:** |

## HOLD SEPARATE AND PRESERVATION OF ASSETS STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

## I. DEFINITIONS

As used in this Hold Separate and Preservation of Assets Stipulation and Order ("Stipulation and Order"):

A.    "Acquirer" means the entity to whom defendants divest either the Signature Divestiture Assets or the Hawker Beechcraft Divestiture Assets.

B.    "Signature" means defendant Signature Flight Support Corporation, a Delaware corporation with its headquarters in Orlando, Florida, its successors and assigns, and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.    "Hawker Beechcraft" means defendant Hawker Beechcraft Services, Inc., a Kansas corporation headquartered in Wichita, Kansas, its successors and assigns, and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.    "IND" means Indianapolis International Airport, located in the Indianapolis, Indiana metropolitan area.

E.    "IND FBO Services" means any or all services related to providing fixed base operator services to general aviation customers at IND, including, but not limited to, selling fuel, leasing hangar, ramp, and office space, providing flight support services, providing access to terminal facilities, or arranging for ancillary services such as rental cars or hotels.

F.    "FBO Facility" means any and all tangible and intangible assets that comprise the business of providing IND FBO Services, including, but not limited to, all personal property, inventory, office furniture, materials, supplies, terminal space, hangars, ramps, general aviation fuel tank farms for jet aviation fuel and aviation gas, and related fueling equipment, and other tangible property and all assets used in connection with the business of providing IND FBO Services; all licenses, permits, registrations, and authorizations issued by any governmental

2

organization relating to the business of providing IND FBO Services subject to licensor's

approval or consent; all contracts, teaming arrangements, agreements, leases, commitments,

certifications, and understandings relating to the business of providing IND FBO Services,

including supply agreements; all customer lists, contracts, accounts, and credit records; all other

records relating to the business of providing IND FBO Services; all intangible assets used in the

development, production, servicing, and sale of IND FBO Services, including, but not limited to,

all licenses and sublicenses, technical information, computer software and related

documentation, know-how, drawings, blueprints, designs, design protocols, specifications for

materials, specifications for parts and devices, and safety procedures for the handling of materials

and substances.

G.     "Hawker Beechcraft Divestiture Assets" means all rights, titles and interests,

including all fee, leasehold and real property rights, in Hawker Beechcraft's existing and future

FBO Facilities at IND that Signature will acquire in the Proposed Transaction.

H.     "Signature Divestiture Assets" means all rights, titles and interests, including all

fee, leasehold and real property rights, that Signature possesses in its FBO Facility at IND.

I.     "Proposed Transaction" means Signature's proposed acquisition of certain assets

from Hawker Beechcraft pursuant to the Sale of Line Service Business By Hawker Beechcraft

Services, Inc. to Signature Flight Support Corporation Asset Purchase Agreement Dated

February 21, 2008 that is the subject of the Hart-Scott-Rodino Premerger Notification Filing

2008-0879.

3

## II. <u>OBJECTIVES</u>

The proposed Final Judgment filed in this case is meant to ensure defendants' prompt

divestiture of either the Hawker Beechcraft Divestiture Assets or the Signature Divestiture Assets

for the purpose of maintaining competition in the provision of IND FBO services in order to

remedy the effects that the United States alleges would otherwise result from Signature's

acquisition of Hawker Beechcraft's FBO Assets.  This Stipulation and Order ensures that, prior

to such divestiture, the Hawker Beechcraft Divestiture Assets and the Signature Divestiture

Assets will be preserved in their current or an improved state.  This Stipulation and Order also

ensures that the Hawker Beechcraft Divestiture Assets will be maintained as a separate and

independent, economically viable, ongoing business uninfluenced by consummation of the

Proposed Transaction, and that competition between the Signature Divestiture Assets and the

Hawker Beechcraft Divestiture Assets in the provision of IND FBO services will be maintained

until the divestiture of either the Hawker Beechcraft Divestiture Assets or the Signature

Divestiture Assets is accomplished.

## III. <u>JURISDICTION AND VENUE</u>

This Court has jurisdiction over the subject matter of this action and over each of the

parties hereto and venue of this action is proper in the United States District Court for the District

of Columbia.

4

## IV. <u>COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT</u>

A.     The parties stipulate that a Final Judgment in the form attached hereto as Exhibit

A may be filed with and entered by the Court, upon the motion of any party or upon the Court's

own motion, at any time after compliance with the requirements of the Antitrust Procedures and

Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other

proceedings, provided that the United States has not withdrawn its consent, which it may do at

any time before the entry of the proposed Final Judgment by serving notice thereof on defendants

and by filing that notice with the Court.

B.     Defendants shall abide by and comply with the provisions of the proposed Final

Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals

of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of

the signing of this Stipulation and Order by the parties, comply with all the terms and provisions

of the proposed Final Judgment as though the same were in full force and effect as an Order of

the Court.

C.     Defendants shall not consummate the transaction sought to be enjoined by the

Complaint herein before the Court has signed this Stipulation and Order.

D.     This Stipulation and Order shall apply with equal force and effect to any amended

proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.    In the event (1) the United States has withdrawn its consent, as provided in Paragraph IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation and Order, and the making of this Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F.    Defendants represent that the divestiture ordered in the proposed Final Judgment can and will be made and that defendants later will raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

G.    Defendants shall take no action that would jeopardize, delay, or impede the divestiture required by the proposed Final Judgment, or, if a trustee is appointed pursuant to the Final Judgment, interfere with the ability of the trustee to complete the divestiture pursuant to the Final Judgment to an Acquirer acceptable to the United States.

6

## V. **HOLD SEPARATE AND PRESERVATION OF**
## **HAWKER BEECHCRAFT DIVESTITURE ASSETS**

Until the divestiture required by the Final Judgment has been accomplished:

A.      The Hawker Beechcraft Divestiture Assets shall be operated as an independent, ongoing, economically viable competitive business held separate and apart from Defendant Signature's operations. Defendant Signature may ensure that the Hawker Beechcraft Divestiture Assets comply with Signature's policies and procedures relating to compliance with environmental, health, safety, human resource, and securities or other laws and regulations. Within twenty (20) days after the entry of this Stipulation and Order, defendants will inform the United States of the steps they have taken to comply with this Stipulation and Order.

B.      Defendants shall not coordinate any aspect of their FBO operations, including marketing or sales. Defendants shall take all steps necessary to ensure that:

      (1)    the Hawker Beechcraft Divestiture Assets are maintained and operated as an independent, ongoing, economically viable and active competitor in the provision of IND FBO Services;

      (2)    the management of the Hawker Beechcraft Divestiture Assets will not be influenced by Signature;

      (3)    the management of the Hawker Beechcraft Divestiture Assets acts to maintain and increase the sales of the Hawker Beechcraft Divestiture

Assets, and to maintain at 2008 or previously approved levels for 2009, whichever are higher, all promotional, advertising, sales, technical assistance, and marketing support for the Hawker Beechcraft Divestiture Assets; and

(4)    the books, records, competitively sensitive sales, marketing, and pricing information, and decision-making concerning the provision and sale of IND FBO Services by the Hawker Beechcraft Divestiture Assets will be kept separate and apart from Signature's operations.

C.    Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Hawker Beechcraft Divestiture Assets as economically viable and competitive, ongoing businesses, consistent with the requirements of Sections V(A) and (B).

D.    Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge, or otherwise dispose of any asset or assets of the Hawker Beechcraft Divestiture Assets.

E.    Defendants' employees with primary responsibility for the operation and sale of IND FBO Services for the Hawker Beechcraft Divestiture Assets, shall not be transferred or reassigned to other areas within the company except for transfer bids initiated by employees pursuant to defendants' regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days notice of such transfer.

8

F.    Defendants shall appoint a person or persons, subject to the approval of the United

States in its sole discretion, to oversee the Hawker Beechcraft Divestiture Assets, and who will

be responsible for defendants' compliance with this Section.  This person shall have complete

managerial responsibility for the Hawker Beechcraft Divestiture Assets, subject to the provisions

of the proposed Final Judgment.  In the event such person is unable to perform his duties,

defendants shall appoint, subject to the approval of the United States in its sole discretion, a

replacement within ten (10) working days.  Should defendants fail to appoint a replacement

acceptable to the United States within this time period, the United States shall appoint a

replacement.

## VI.    PRESERVATION OF SIGNATURE DIVESTITURE ASSETS

Until the divestiture required by the proposed Final Judgment has been accomplished:

A.    Defendant Signature shall preserve, maintain, and continue to operate the

Signature Divestiture Assets in a manner consistent with this Stipulation and Order and the

proposed Final Judgment.  Defendant Signature shall take all steps necessary to ensure that the

Signature Divestiture Assets will be maintained and operated as an ongoing, economically viable

and active competitor in the provision of IND FBO Services.

B.    Defendant Signature shall provide sufficient working capital and lines and sources

of credit to continue to maintain the Signature Divestiture Assets as an economically viable and

competitive, ongoing business.

9

C.      Defendant Signature shall not, except as part of a divestiture approved by the United States in accordance with the proposed Final Judgment, remove, sell, lease, assign, transfer, destroy, pledge or otherwise dispose of any of the Signature Divestiture Assets.

D.      Defendant Signature's employees whose duties are primarily related to the provision of IND FBO Services shall not be transferred or reassigned to other areas within the company except for transfer bids initiated by employees pursuant to Defendant Signature's regular, established job posting policy.  Defendant Signature shall provide Plaintiff with ten (10) calendar days notice of such transfer.

## VII.    DURATION OF HOLD SEPARATE AND ASSET PRESERVATION OBLIGATIONS

Defendants' obligations under Sections V and VI of this Stipulation and Order shall remain in effect until (1) consummation of the divestiture required by the proposed Final Judgment or (2) until further order of the Court.  If the United States voluntarily dismisses the Complaint in this matter, Defendants are released from all further obligations under this Stipulation and Order.

Dated: July 3, 2008

Respectfully submitted,

FOR PLAINTIFF

Angela L. Hughes (DC Bar #303420)
Trial Attorney, Transportation, Energy
& Agriculture Section
Antitrust Division
U.S. Department of Justice
450 5th Street, NW; Suite 4100
Washington, DC 20530
Telephone: 202/307-6410
Facsimile: 202/307-2784
Email: angela.hughes@usdoj.gov

FOR DEFENDANT SIGNATURE
FLIGHT SUPPORT CORPORATION

Gordon L. Lang (DC Bar # 932731)
Nixon Peabody LLP
401 9th St. N.W., Suite 900
Washington, D.C. 20004
Telephone: 202/585-8319
Facsimile: 202/585-8080
Email: glang@nixonpeabody.com

FOR DEFENDANT HAWKER
BEECHCRAFT SERVICES, INC.

Richard Park (D.C. Bar # 458426)
Fried, Frank, Harris, Shriver & Jacobson
LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  202/639-7064
Facsimile: 202/639-7003
Email: richard.park@friedfrank.com

Peter Guryan
Fried, Frank, Harris, Shriver & Jacobson
LLP
One New York Plaza
New York, NY 10004-1980
Telephone:  212/859-8477
Facsimile: 212/859-4000
Email: peter.guryan@friedfrank.com

11

<u>ORDER</u>

IT IS SO ORDERED by the Court, this _____ day of _____, 2008.

_____
United States District Judge